# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| MICHAEL GERALD WOOD and JACQUELINE WOOD, <br><br> Plaintiffs, <br><br> vs. <br><br> PACCAR, INC, PETERBILT MOTORS COMPANY a Wholly Owned Subsidiary of PACCAR, and UNKNOWN FABRICATORS AND MANUFACTURES, <br><br> Defendants, <br><br> JMJ EQUIPMENT TRANSPORT, INC. <br><br> Claimant. | No. 19-cv-1010-LRR |

---

Before the Court is Plaintiff Michael Wood's Motion for Sanctions and/or to Compel Against Defendant PACCAR INC filed on January 16, 2020. (Doc. 70.) Defendant PACCAR INC ("PACCAR") filed a timely Resistance on January 30, 2020. (Doc. 84.) Plaintiffs filed a timely Reply on February 6, 2019. (Doc. 94.) These matters are fully submitted.

## I.    BACKGROUND

The Court discussed the factual background in a prior ruling:

> This product liability action arises from a September 2016 motor vehicle accident involving a 2014 Peterbilt Model 579 truck (the "Peterbilt 579") designed and manufactured by PACCAR driven by Plaintiff Michael Wood. The Peterbilt 579 collided with a Honda, but the parties are not in agreement regarding whether the instant collision constitutes an "underride."

Plaintiffs describe it as an "underride" (Doc. 34-1 at 5), but PACCAR notes, "the subject crash does not present an underride situation, and therefore inquiries into underride issues is [sic] far afield, lack relevance, and goes [sic] beyond the proportionality of discovery contemplated by Rule 26." (Doc. 37 at 12 n. 2.)

Plaintiffs allege injuries to Mr. Wood were caused by inadequate design of the cab and/or failure to warn and instruct consumers about its danger. Plaintiffs list several alleged design defects. (Doc. 34-1 at 7.) However, the instant dispute principally involves PACCAR's alleged failure to provide the Peterbilt 579 with a "Front Underride Protection System" like it had in its trucks sold in Europe and Australia. Plaintiffs contend information about PACCAR's design of trucks in these other markets is relevant to their contention that there are feasible design alternatives, as well as to PACCAR's "state-of-the-art" defense.

(Doc. 49 at 2.)

## II.    *FACTS UNDERLYING THE DISCOVERY DISPUTE*

In the prior discovery dispute, PACCAR objected to providing information about other vehicles it manufactured because it contended they are not sufficiently similar to the Peterbilt 579 model in the case at bar. The Court's October 25, 2019 order overruled PACCAR's objections and required PACCAR to produce additional responsive documents and provide requested information. (*Id.*) The instant motion raised concerns about the timeliness and completeness of PACCAR's subsequent production, as well as the deposition testimony of two PACCAR employees.

Each party describes the path that led to this dispute. It appears that both parties made serious, good faith efforts to resolve this matter without the intervention of the Court. The record is replete with professional communication from both sides setting for their positions without acrimony or invective. Among the issues subject to the parties' discussion was Plaintiff's desire to subject PACCAR to a corporate deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). This notice apparently was subject to some

revision, but ultimately resulted a November 11, 2019 Second Amended Notice of Oral and Video Deposition of PACCAR, Inc. (Doc. 70-5 (Pl. Ex. C).) PACCAR made objections in its Responses and Objections to Plaintiff's 30(b)(6) Notice of November 1, 2019. (Doc. 70-3 (Pl. Ex. A at 66).) PACCAR did not, however, seek a protective order based on any of the objections asserted.

Anthony Weiblen was the Peterbilt Engineering Manager when the truck in question was developed and approved, and is currently the Director for Product Planning Strategy. (Doc. 89 (Weiblen Dep. Tr. at 32-34).) He appeared for a deposition in Denton, Texas on November 1, 2019, but he was not designated as a Rule 30(b)(6) representative by PACCAR. (*Id.* at 1.) Plaintiff noticed depositions pursuant to a Rule 30(b)(6) notice for October 29, 2019 in Denton, Texas and October 31, 2019 in Mt. Vernon, Washington. (Doc. 70-3 at 33.) Jim Bingaman was deposed as a corporate representative of PACCAR on November 7, 2019. (Doc. 84 at 5.) PACCAR lists other depositions of its employees that were taken in November and December that are not in dispute. (*Id.*) After some delay which appears to be legitimately attributed to the deponent's family medical issues, Lawrence Bean was deposed as a corporate representative in Seattle on December 5, 2019. (Doc. 89-1.) Only the Weiblen and Bean depositions are at issue here.

Meanwhile, PACCAR's production of documents in response to the Court's October 25 order was unfolding. The Court granted Plaintiff's motion to compel and gave PACCAR ten days to produce records responsive to certain requests, including requests relating to trucks that PACCAR had objected to producing on the ground, *inter alia,* they were too dissimilar to the subject truck to warrant production. PACCAR's counsel stated on October 29 that PACCAR was "reviewing the Court's recent order and if any further production or supplementation is necessary, that will be done by way of supplemental responses and any additional documents will be provided to you in a timely

fashion." (Doc. 70-3 at 60.) Plaintiff objects that PACCAR did not produce additional responsive materials prior to Mr. Weiblen's November 1 deposition or notify Plaintiff that PACCAR possessed other responsive documents. (Doc. 70-1 at 6.) Plaintiff argues that Mr. Weiblen was unprepared to testify regarding his knowledge of the design and approval process and refused to answer questions, claiming he needed to review PACCAR records first. (*Id.*) Somewhat similarly, Plaintiff asserts Mr. Bean was not prepared and knowledgeable regarding topic 4 of the November 11 iteration of the 30(b)(6) notice. (Doc. 70-1 at 8.)

On November 4, PACCAR notified Plaintiff that it had identified additional records to produce in response to one of Plaintiff's requests. (*Id.* at 7.) After PACCAR advised Plaintiff there would be more documents to produce, the parties agreed to move the depositions of Brian Birmingham, Lawrence Bean, and Landon Sproull into December. In an unopposed November 5, 2019 motion for extension of time to produce documents, PACCAR stated:

> Many, if not most of the materials at issue in the Order, however, require communication with entities located outside the United States. Personnel at PACCAR/Peterbilt involved in the litigation discovery process do not regularly interact with personnel at Kenworth Australia or DAF, and when it existed, Foden. These foreign entities have little if any experience with discovery production in litigation in the United States. Further, there are time zone and language challenges. (Ex. A; Bingaman Affidavit at ¶ 8) Once the appropriate foreign personnel are identified, the documents described in the Order, to the extent they exist, must first be searched for and identified by these other entities, reviewed by individuals overseas, and then provided to the Defendant and counsel in this case before they are prepared for production here, as necessary, and then produced. (Ex. A; Bingaman Affidavit at ¶ 9) Even the domestically produced documents require a process that generally exceeds five business days. This effort was commenced upon receipt and review of the October 25 Order and is ongoing.

(Doc. 52 at 2-3.)  The Court granted PACCAR additional time to produce documents; i.e., until November 25, 2019.  PACCAR represented that it produced documents in response to the Court's order on a rolling basis on November 1, 5, 15, 18, 25 and December 4, 11, and 17, 2019.  (Doc. 84 at 4.)

## III.   THE PARTIES' POSITIONS

Plaintiff has requested sanctions against PACCAR.  Plaintiff alleges that PACCAR and its counsel had misrepresented that it had timely produced records prior to Mr. Weiblen's deposition.  Plaintiff also alleges PACCAR and its counsel obstructed Mr. Weiblen's deposition by providing non-responsive and evasive answers and by tendering him unprepared to respond to inquiries regarding topic 4 of the Rule 30(b)(6) notice.  As a remedy, Plaintiff requests the Court enter an order declaring that certain facts have been established; compel a second deposition of Mr. Weiblen; and/or award  Plaintiff attorneys' fees and expenses.

To establish PACCAR's alleged misrepresentation, Plaintiff relies principally on assertions in PACCAR's September 23, 2019 response to Plaintiff's motion to compel. (Doc. 70-1 at 10-11 (citing Doc. 37).)  Plaintiff asserts PACCAR failed to timely produce its records prior to Mr. Weiblen's deposition on November 1 and thus its response was incomplete under Rule 26(g).  (*Id.* at 11.) Plaintiff contends the untimely production was not substantially justified.  Plaintiff also argues that PACCAR failed to produce DAF[1] FEA[2] models and simulations.  Plaintiff argues PACCAR's actions have prejudiced Plaintiff and given PACCAR a "tactical advantage" by preventing Plaintiff's use of the documents during Mr. Weiblen's and Mr. Bean's depositions.  (Doc. 70-1 at 13.)

Plaintiff finally claims that PACCAR obstructed Mr. Weiblen's deposition by failing to timely produce records and failing to prepare him to respond to Plaintiff's

---

[1] DAF is a PACCAR division located in the Netherlands.  (Doc. 84 at 9.)
[2] "Finite Element Analysis." (Doc. 37-1 at 7-8.)

inquiries based on his personal knowledge.  Plaintiff cites the Court's prior order, which required that certain persons be prepared to testify based on their personal knowledge:

> [Interrogatory 6] seeks the identities and contact information for the "design release engineer(s) and management that approved and released the design and testing of the cab structure and occupant restraint system for the vehicle in question."  PACCAR asserts the design is a collaborative process involving literally hundreds if not thousands of individuals and the design cannot be attributed to any one individual or group.  PACCAR's response and supplemental responses ultimately identify five individuals.  While it is no doubt true that many individuals were involved in the design, Plaintiffs are entitled to discover the identities of the individuals primarily responsible for the design, as well as the management personnel who approved it.  Plaintiffs' inquiry seems reasonably directed to finding people with pertinent knowledge of these issues.  Nevertheless, there seems to be little point in attempting to identify all individuals involved in the design or its approval or requiring PACCAR to identify an arbitrary number of persons involved. The parties are apparently still involved in depositions of the five individuals previously identified. The previously identified witnesses shall be prepared to respond to Plaintiffs' inquiries regarding their personal knowledge of the design and approval process, including the identity of other individuals who they know to have been involved in such processes.  Defendant shall provide the information sought by Interrogatory 6 with respect to these persons.

(Doc. 49 at 15-16.)  Plaintiff points to several instances where he believes Mr. Weiblen obstructed his deposition.  For example, Mr. Weiblen would not directly admit that he or PACCAR had a responsibility to safely design trucks.  (Doc. 89 (Weiblen Dep. Tr. at 9-11).)  He would not answer if he was aware if the cab of the truck crushed in the footwell area before the deposition.  (*Id.* at 14, 17-18.)   He admitted that no frontal airbags were offered with the subject vehicle, but insisted on volunteering that side rollover bags were offered.  (*Id.* at 61-64.)  Plaintiff cites other instances where Mr. Weiblen volunteered nonresponsive information. (*See e.g., id.* at 179 (regarding offset crash testing).)

Plaintiff objects that Mr. Weiblen "parroted a scripted defense mantra." (Doc. 70-1 at 14.) Specifically, Plaintiff cites numerous instances where he responded to inquiries by referring to a design process. (*See, e.g.*, Doc. 89 (Weiblen Dep. Tr. at 19, 24-27, 58, 97-99).) Plaintiff also points to instances where Mr. Weiblen repeatedly stated he needed to review records to answer questions. (*See, e.g.*, *id.* at 90.)

Plaintiff contends that Mr. Bean, who had been designated to testify pursuant to Rule 30(b)(6) on topic 4, was unprepared to testify and thus, PACCAR failed to appear. Plaintiff points to Mr. Bean's lack of relevant experience (i.e., he worked on the vehicle's air conditioning system). Plaintiff argues he was ill-prepared, pointing out that Mr. Bean spoke with only one other PACCAR employee to prepare for his deposition and he could not identify any specific document he reviewed. In the brief in support of his motion, Plaintiff does not, as Defendant points out, specify any instances where Mr. Bean was unprepared. In his reply brief, Plaintiff points to several such instances documented by Plaintiff's expert in a declaration in support of a motion to continue the expert deadline:

> For example, Mr. Bean admitted in his deposition that he did not know when PACCAR started using front underride protection systems (FUPS) in its DAF trucks in Europe, which was one of the topics in paragraph 4 of the notice to PACCAR (198:13-25), when the ECE R93 standard went into effect for PACCAR's trucks in Europe (199:1-5), when the standards were adopted in Australia (204:17-19), and that he could not offer testimony for PACCAR on the designs of its FUPS as sought in the notice (199: 6-19; 204:12-205:13) and whether there was a cost benefit analysis for FUPS in Europe and Australia (205:15-206:4); Mr. Bean further admitted that he did not know whether PACCAR's DAF's trucks did simulations of their cabs in the ECE tests with dummies in the simulations (261:18-21) and that he had not even seen the actual current testing of by DAF (264:23-24).

(Doc. 94-2 at 3.)

PACCAR denies it engaged in any sanctionable conduct. PACCAR contends that the Court significantly expanded the scope of discovery with the October 25[3] order that compelled it to produce documents. PACCAR cites its unopposed motion for additional time to comply with that order describing the difficulties attendant upon obtaining records from its related divisions outside the United States. (Doc. 52.) PACCAR argues that it did not misrepresent that it had produced all documents prior to Mr. Weiblen's deposition. PACCAR asserts that any statements about the completeness of its production prior to the Court's October 25 order should be interpreted in the context of what it contended was the proper scope of discovery.

PACCAR argues that it timely produced the DAF FEA models following the Court's October 25 order and in advance of the December 4 and 6 deposition of PACCAR employees. PACCAR points out that Plaintiff asked "remarkably few" questions about DAF or marked any of the DAF records as exhibits during these depositions. (Doc. 84 at 9.) PACCAR notes some technical challenges posed by the FEA files that it worked through in late November and early December. Nevertheless, PACCAR contends that Plaintiff was provided "ECE 29 test reports" that are narrative versions of the DAF FEA output files on November 25, 2019. PACCAR contends that the deposition of Mr. Bean might have been more productive if Plaintiff had used documents that had been produced. (*Id.* at 10.)

PACCAR also argues that it did not obstruct Mr. Weiblen's deposition because it offered to move Mr. Weiblen's deposition to a later date. PACCAR argues that it could not prepare Mr. Weiblen to testify based on his personal knowledge of the design process. PACCAR notes that counsel never made a speaking objection or attempted to place constraints on the questioning. PACCAR contends that Mr. Weiblen had never been

---

[3] PACCAR incorrectly provides October 24 as the date of the order. (Doc. 84 at 4; Doc. 84-2.)

deposed before and his anxiety was exacerbated by Plaintiff's counsel's badgering. PACCAR claims that during the deposition, Plaintiff's counsel was seeking "sound bites" and was more interested in documenting his dissatisfaction with Mr. Weiblen's answers than obtaining information.

PACCAR also denies obstructing Mr. Bean's deposition. PACCAR claims no protective order was necessary and Plaintiff's claim that PACCAR should have moved for a protective order is somehow moot. Although PACCAR claims no protective order was necessary, it nevertheless complains that topic number 4 is four pages long and is confusing and contradictory. PACCAR argues that Mr. Bean does not have to possess encyclopedic knowledge of each topic and that he was prepared to address topic 4. PACCAR argues that instead of seeking information about alternative designs, Plaintiff's counsel asked him to recite dates and design details he could not recall from memory.

## IV.   ANALYSIS

### A.   Whether PACCAR Misrepresented that it had Timely Produced Records

Parties have "an affirmative duty to conduct pretrial discovery in a responsible manner." *St. Paul Reins. Co., Ltd. v. Com. Fin. Corp.*, 198 F.R.D. 508, 515 (N.D. Iowa 2000); *see also* Fed. R. Civ. P. 26; Fed. R. Civ. P. 37. Plaintiff contends that PACCAR made multiple representations that it had produced its documents when, in fact, it had not done so. Plaintiff finds those representations in PACCAR's Response and Brief in Opposition to Plaintiffs' First Motion to Compel filed on September 23, 2019 (i.e., approximately a month before the Court ordered PACCAR to produce documents regarding its foreign subsidiaries). (Doc. 70-1 at 10-11 (citing Doc. 37).)

Plaintiff relies in part on *Pals v. Weekly*, 8:17CV27, 2018 WL 2272789 (D. Neb. May 17, 2018). In *Pals*, the defendant's counsel told the Court and opposing counsel that the defendant had produced all of its documents and that no other responsive documents had been located. *Id.* at *1. Five days before a scheduled 30(b)(6) deposition, defense

counsel discovered thousands of additional responsive documents while preparing for the deposition and the deposition was continued. *Id.* The Court held:

> Defendant's counsel previously advised both Plaintiffs and the Court that certain responsive documents did not exist. Following this representation, and less than a week in advance of the Rule 30(b)(6) deposition, Defendant inexplicably located thousands of pages of responsive documents. Other than referring to this oversight as a mistake, Defendant has offered no explanation or justification for why these documents were not timely located and produced. Defendant's failure to promptly locate and produce responsive materials has needlessly increased litigation costs.

*Id.* at *2. *Pals* is helpful, but distinguishable.

Whether the Court's October 25 order "significantly expanded the scope of discovery" or simply ruled that PACCAR had interpreted the scope too narrowly, the result is the same. Defendant PACCAR appears to have been caught somewhat flatfooted by the order. In any event, PACCAR had some work to do to produce discovery after the order was entered. PACCAR's resistance to the motion to compel was not pursued in bad faith. PACCAR reasonably did not spend the time and incur the expense to gather responsive documents from its far-flung subsidiaries while awaiting the ruling. Thus, the documents were apparently not immediately at hand and, perhaps, PACCAR's counsel was not well-informed about what documents might be available or how long it would take to produce them.

PACCAR's counsel's email of October 29 seems to be near the center of the dispute. In that email, Darin Lang stated on PACCAR's behalf, "In addition, we are reviewing the Court's recent order and if any further production or supplementation is necessary, that will be done by way of supplemental responses and any additional documents will be provided to you in a timely fashion." (Doc. 70-3 at 60.) To put this in context, there had been a call during which counsel discussed alternative deposition dates. Mr. Lang states,

During the October 24[4] call, Mr. Brown indicated that he preferred to depose most of the PACCAR employees whose depositions had been noticed after PACCAR's document productions were due per the Court's very recently entered order on Plaintiff's First Motion to Compel. . . . Mr. Pearson and I offered to reschedule the November 1 deposition of Mr. Weiblen to accommodate Mr. Brown's expressed concerns. Mr. Brown indicated that he did not believe the PACCAR documents to be produced pursuant to the Court's Order would have any impact on Mr. Weiblen's deposition, and indicated that he would like to proceed on November 1 with Mr. Weiblen's deposition.

(Doc. 84-2 at 3.) To some extent, it is unreasonable for Plaintiff to rely on Defendant's September 23, 2019 representations that PACCAR had produced all of its records for purposes of the instant motion. PACCAR was then openly resisting the production of documents for a variety of reasons. The representations Plaintiff points to cannot reasonably be construed to be a representation that records of PACCAR's foreign subsidiaries had been produced. In *Pals*, the defendant had represented that particular categories of records had been produced and offered no explanation for their later discovery. In the instant case, PACCAR was open about the fact it was not producing certain categories of documents. In fact, PACCAR was formally disputing their production. In *Pals* the plaintiffs reasonably relied on the defendants' assurances that all records had been produced. Here, Plaintiff knew Defendants had refused to produce certain categories of documents and must have at least intuited their existence. Mr. Lang's October 29, 2019 email is not to the contrary: "In addition, we are reviewing the Court's recent order and if any further production or supplementation is necessary, that will be done by way of supplemental responses and any additional documents will be provided to you in a timely fashion." (Doc. 70-3 at 60.) In context, this appears to have

---

[4] This date must be incorrect. The Court's order being discussed was not entered until October 25.

been a truthful, but guarded, statement. Thus, the Court finds that PACCAR did not make misrepresentations that warrant sanctions.

PACCAR did not produce records prior to Mr. Weiblen's deposition. Plaintiff was given the opportunity to wait for further production but declined to do so. The Court is not critical of Plaintiff in this regard. Parties should pursue discovery practically and with urgency. To the extent Plaintiff was prejudiced by absence of complete records at the Weiblen deposition, the relief afforded below will be sufficient to address it.

**B.** ***Whether PACCAR Obstructed Mr. Weiblen's Deposition***

Pursuant to Federal Rules of Civil Procedure Rules 26(b)(1) and 30, deponents are required to answer all relevant nonprivileged questions asked in a deposition. *Llanes v. Barton*, No. 4:06CV3155, 2008 WL 1840771, at *1 (D. Neb. Apr. 22, 2008). *Llanes* presents a helpful contrast to the case at bar. The pro se plaintiffs in *Llanes* simply refused to answer questions about work history, medical history, criminal history, work-related injuries, and previous dealings with the State Patrol. *Id.* Here, PACCAR's counsel never instructed Mr. Weiblen not to answer any question and Mr. Weiblen did not try to declare any topic off limits. Instead, any defects in Mr. Weiblen's testimony resulted from his lack of knowledge and apparent reluctance to simply answer the questions posed.

Mr. Weiblen was not a corporate designee. Neither party has asserted there is normally a duty to prepare a witness who is not a corporate witness to testify on their personal knowledge. An examining lawyer may occasionally be happy to find an unprepared fact witness, or at least a deponent willing to profess ignorance on questions posed to him. The response "I don't know" can effectively pin down a fact witness's testimony.

In this case, however, Mr. Weiblen's role lies somewhere between a mere fact witness (i.e., someone who can testify whether a test occurred) and a corporate designee

(i.e., someone who can bind the corporation regarding whether the test was appropriate). The Court's prior order on this issue arose out of a dispute over PACCAR's objection to identifying persons with knowledge on very specific topics. (Doc. 49 at 15.) PACCAR proposed Mr. Weiblen as a person who had some role in the design of the truck and the topics mentioned. Requiring him to be prepared to answer questions based on his personal knowledge was reasonable under these circumstances. Even if he was not identified as a 30(b)(6) deponent, his preparation for the deposition could avoid him merely professing ignorance or lack of recollection on the issues at hand and wasting the parties' time and money.

PACCAR asserts that it cannot prepare Mr. Weiblen to testify on his personal knowledge because his personal knowledge is his alone. (Doc. 84 at 12.) This is not so. Every trial lawyer worth his or her briefcase has prepared witnesses to testify based on personal knowledge. Fact witnesses are shown documents that they have written or read. Fact witnesses' memories are refreshed before they are deposed so they appear competent and in command of the subject matter – even if they ultimately have to have their memories refreshed during their testimony. They are advised of the likely subjects of cross examination and given advice on dealing with nettlesome issues.

By the same token, it is sometimes helpful for the attorney taking the deposition – if he or she truly desires information from a witness – to use documents to elicit specific information. Other times, deposing lawyers want specific admissions, something PACCAR derides as "soundbites." Barring something otherwise objectionable about a question (e.g., asked and answered, compound, argumentative, etc.) it is not an illegitimate purpose to pin down a witness's testimony on specific facts or make useful admissions that happen to be good soundbites.

In the case at bar, the problems Plaintiff points to are the product of both Mr. Weiblen's lack of preparation and Plaintiff's counsel's apparent unwillingness to use

available documents to elicit more informed answers. The latter may have been a perfectly legitimate technique. A questioner may not want a witness to testify from documents. Nevertheless, it makes it somewhat difficult to place all of the blame for the unproductive deposition on Mr. Weiblen or PACCAR.

One other factor contributed to the difficulties at the deposition. Mr. Weiblen often simply did not answer the question posed to him. For example,

> Q. PACCAR is responsible for safely designing the Peterbilt brand Model 579 truck; true?
> A. Peterbilt is a division of PACCAR and we design Peterbilt trucks, yes.
> Q. And it is your responsibility to safely design those trucks for their use; right?
> A. There is a long process as far as making sure we design the truck to not only be safe, but also to be what the customer requires as far as meeting their parameters and attributes, as far as weight, functionality and how the truck should operate.
> Q. Okay. Mr. Weiblen, my question was it is the responsibility of PACCAR and its division Peterbilt to safely design the truck; right?
> A. As I stated, there's a long process to make sure we design the truck to make sure it meets safety requirements, functionality requirements and weight requirements and other attributes the customer needs for the truck.

(Doc. 89 (Weiblen Dep. Tr. at 9-10).) Here, the questioner may have been seeking a soundbite, but it was still a relevant question that warranted an answer (i.e., whether Mr. Weiblen, who was part of the design team, understood that PACCAR and its division Peterbilt were responsible for the safety of the design). In addition, Mr. Weiblen seemed unnecessarily guarded about what facts were known to him:

> Q. (BY MR. BROWN) Were you aware that the passenger footwell area of your cab did not crush in and collapse on the legs of Mrs. Wood in the passenger seat?
> A. As I –
>     MR. PEARSON: Same objection. Go ahead.
> A. As I stated earlier, I saw pictures of a crashed car with frontal impact and I saw the crash of a truck with frontal impact.

MR. BROWN: Objection, nonresponsive.

Q. (BY MR. BROWN) Sir, I'm asking were you aware that Ms. Wood did
not sustain injuries to her legs in the crash?

A. As I stated earlier, sir, I saw a picture of a car with a frontal impact and
a truck with frontal impact.

Q. I'm not asking about pictures. I want to know what you know. Did you
know before you got here that the crash did not have crush into the footwell
area of the passenger side of the truck where Ms. Wood was sitting; yes or
no?

A. I believe I'm --

　　　　MR. PEARSON: Objection, form.

Q. (BY MR. BROWN) Either you did or you didn't.

A. I believe I'm stating what I did know, sir. I saw a picture of a vehicle
with a frontal impact and a truck with a frontal impact.

Q. So you didn't know that?

A. As I stated, I -- I believe I'm answering your question. I saw a vehicle
with a car with frontal impact and a truck with frontal impact.

(*Id.* at 17-18.)  These are instances of obvious evasion.  Had Mr. Weiblen been testifying

at trial, the Court would have instructed him to answer the question.

The Court has "wide discretion to fashion a remedy or sanction as appropriate for

the particular circumstances of this case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th

Cir. 2008).  Plaintiff questioned Mr. Weiblen for four hours, 39 minutes.  (Doc. 94-1.)

On the whole, the deposition does appear to have resulted in some useful discovery of

information, although somewhat impeded by Mr. Weiblen's unpreparedness and

reluctance to answer direct questions.  In declining to award attorneys' fees as a sanction

on this issue, the Court considers the fact that Mr. Weiblen was being deposed for the

first time and may have been nervous.  The Court also considers that PACCAR's counsel

may not have appreciated the import of the Court's direction to prepare Mr. Weiblen.

Therefore, the Court will require PACCAR to prepare[5] Mr. Weiblen and have him submit to an additional deposition. Plaintiff may question Mr. Weiblen for up to an additional three hours. This deposition and the three hours shall not count against Plaintiff in the parties' stipulation regarding the number of depositions and hours. (Doc. 35-1 at 2.) Mr. Weiblen is ordered to fully and fairly answer questions posed to him unless he is instructed not to by counsel as permitted by the Federal Rules of Civil Procedure.

**C.      Whether PACCAR Obstructed Mr. Bean's Deposition**

Federal Rule of Civil Procedure 30(b)(6) provides that, in response to a notice or subpoena, an organization must designate one or more persons who consent to testify on its behalf. "The persons designated must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). "The testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation, not of the specific individual deponents." *Waste Connections, Inc. v. Appleton Elec., LLC*, No. 8:12CV436, 2014 WL 1281918, at *3 (D. Neb. Mar. 27, 2014) (quoting *QBE Ins. Corp. v. Jorda Enter., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012)); *see also Estate of Thompson v. Kawasaki Heavy Indus., Ltd.*, 291 F.R.D. 297, 303 (N.D. Iowa 2013) ("When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition."). "The duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in

---

[5] The Court envisions preparation similar to that of a 30(b)(6) deponent, including having him review those documents that are pertinent to the design work or other relevant issues he was personally involved in. PACCAR is instructed to have Mr. Weiland review his deposition and highlight for him those criticisms raised by Plaintiff in his briefs. PACCAR should also have him review this order.

which the designated witness was personally involved." *Waste Connections, Inc.*, 2014 WL 1281918, at *3.

PACCAR made certain objections to Plaintiff's draft Rule 30(b)(6) notice, but did not file a motion for protective order. "If it had an objection to discovery, its opportunity was to request a protective order under Rule 26(c)." *E.E.O.C. v. Thurston Motor Lines, Inc.*, 124 F.R.D. 110, 114 (M.D.N.C. 1989). If a party fails to designate a witness to appear at a deposition, that party has violated Rule 37(d) unless that party has moved for a protective order. *Ferko v. Natl. Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 142 (E.D. Tex. 2003) (citing *Bregman v. District of Columbia*, 182 F.R.D. 352, 355 (D.D.C. 1998)). If the designated witness "is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Resolution Tr. Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993).

Since PACCAR did not seek a protective order but instead designated Mr. Bean on topic 4 and produced him for his deposition, PACCAR's complaints about the length, complexity, or contradictory nature of the notice are to no avail. Thus, Mr. Bean should have been fully prepared on the topic. If he was insufficiently prepared, then PACCAR is subject to sanctions for nonappearance.

As with Mr. Weiblen, Mr. Bean's deposition also shows some lack of preparation by PACCAR, but it also shows a lack of diligence or desire by Plaintiff to overcome this barrier. For example, Mr. Bean appeared unprepared to identify the date PACCAR started using front underride protection systems in Europe. The following interchange occurred:

> Q.    PACCAR started using front underride protection systems when in Europe? 1993?
> A.    I don't know.
> Q.    That's one of the topics of the notice that you're here to testify about.

> A.    I don't know when DAF started originally offering those -- DAF Trucks, when they -- I would imagine whenever that regulation was promulgated they had to meet that requirement.
>
> Q.    You didn't prepare for the deposition by looking that up to confirm when that was done?
>
> A.    When it was promulgated, when that requirement had to have been met, we would have met that requirement.  As the exact date what that is, I have no idea what that is.

(Doc. 89-1 (Bean Dep. Tr. at 198).)  "[W]hen PACCAR implemented" designs with front underride systems is among the first items listed in topic 4(a).  It is reasonable to expect Mr. Bean to have inquired about that issue in advance of the deposition.  Apparently, Plaintiff had some reason to believe the correct date was 1993.  It is also reasonable for a witness to be unable to recall a specific date or detail in the course of a deposition.  However, if obtaining an admission on the date from a corporate representative was important, Plaintiff could have made further inquiry such as "Does 1993 sound correct to you?" or "Would looking at any records help you to identify the date?"

The deficiencies in Mr. Bean's preparedness are not limited to his recollection of dates.  Plaintiff's expert identified a number of substantive deficiencies:

> [Mr. Bean] could not offer testimony for PACCAR on the designs of its FUPS as sought in the notice and whether there was a cost benefit analysis for FUPS in Europe and Australia; Mr. Bean further admitted that he did not know whether PACCAR's DAF's trucks did simulations of their cabs in the ECE tests with dummies in the simulations and that he had not even seen the actual current testing of by DAF.

(Doc. 94-2 at 3 (citations omitted).)  These examples are merely illustrative of

> the lack of preparation and failure of Defendant to make "a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to prepare those persons in order

that they can answer fully, completely, unevasively, the questions posed by [the interrogator] as to the relevant subject matters."

*Tolston v. Charles Drew Health Ctr., Inc.*, 8:16CV176, 2017 WL 2838134, at *5 (D. Neb. June 30, 2017) (quoting *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995)) (alterations in original). The Court finds that PACCAR failed to provide a witness fully prepared to respond to topic 4. This failure may be a product of Mr. Bean's lack of preparation, or it may be that PACCAR could have selected a better person to speak on topic 4 or its subparts, especially in relation to the activities of its foreign subsidiaries. Rule 30(b)(6) does not give the party who issues the notice the right to pick the designee. *Cleveland v. Palmby*, 75 F.R.D. 654, 657 (W.D. Okl. 1977). Nevertheless, PACCAR may want to reconsider its choice of Mr. Bean in complying with the terms of this order.

Therefore, the Court will require PACCAR to prepare Mr. Bean (or a different witness or witnesses) to submit to an additional deposition regarding topic 4 of the Rule 30(b)(6) notice. Plaintiff may question the witness or witnesses so designated for up to an additional three hours. This deposition and the three hours shall not count against Plaintiff in the parties' stipulation regarding the number of depositions and hours. (Doc. 35-1 at 2.) The witness is ordered to fully and fairly answer questions posed to him unless he is instructed not to by counsel as permitted by the Federal Rules of Civil Procedure.

## D.    *Discovery Sanctions*

The Court is authorized—and sometimes required—to impose sanctions to remedy discovery abuse. Sanctions are intended "'to penalize those whose conduct may be deemed to warrant' them and 'deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Sec. Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 936, 942 (8th Cir. 2015) (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639,

643 (1976)). The purpose of sanctions under Rules 26(g) and 37(c) is "to deter abuse and compensate the opposing party for 'all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly.'" *Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*, 19 F.3d 431, 439 n.10 (8th Cir. 1994) (quoting *In re Stauffer Seeds*, 817 F.2d 47, 50 (8th Cir. 1987)); *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018) ("The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37.").

Rule 37(c) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e)" and the failure is not "substantially justified" or "harmless," the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure" and "may inform the jury of the party's failure." Fed. R. Civ. P. 37(c)(1)(A)–(B). To assess the appropriate discovery sanction, "the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692 (citing *Sellers v. Mineta*, 350 F.3d 706, 711–12 (8th Cir. 2003)).

Plaintiff has requested the Court order, as a sanction, that the following facts be taken as established: "that PACCAR had safer alternative heavy truck bumper, cab, and occupant restraint designs in use in its DAF European trucks when it manufactured the subject Peterbilt Model 579 truck in the United States that would have prevented the injuries to Plaintiff." (Doc. 70 at 2.) Here the Court finds that such a sanction is unnecessary and disproportional to the discovery abuse.

However, the Court does conclude that an award of attorney fees is appropriate under Fed. R. Civ. P. 37(a)(5)(A). Plaintiff has not requested reimbursement of fees and expenses incurred in deposing Mr. Bean (as he did with Mr. Weiblen). For the

reasons set forth above in section B, the Court does not award Plaintiff the costs associated with deposition of Mr. Weiblen and finds such an award is unwarranted. Plaintiff requests $11,780 for attorneys' fees incurred in filing the instant motion. Plaintiff's motion is being granted in part and denied in part. The Court has considered the proportion of the briefing related to issues upon which Plaintiff was successful. The Court has also considered the reasons for the noncompliance and other *Sellars* factors. Plaintiff is awarded attorneys' fees in the amount of $5,000.

## V.  CONCLUSION

Plaintiffs' Motion for Sanctions and to Compel against PACCAR INC (Doc. 70.) is **granted in part** and **denied in part** as explained above. PACCAR shall make Mr. Mr. Weiblen and Mr. Bean (or other Rule 30(b)(6) designee(s)) available for deposition on or before March 6, 2020.  In addition, PACCAR shall pay Plaintiff attorneys' fees in the amount of $5,000.

**IT IS SO ORDERED** this 19th day of February, 2020.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa